**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY, ) ) | |
| Plaintiff, ) ) | Cause No.:   4:24-cv-00032 |
| v. ) ) | |
| GOLDNER CAPITAL MANAGEMENT ) LLC d/b/a Goldner Capital Management ) **Serve at:** ) Delaware Corporation Services Inc. ) 901 N. Market Street Ste. 102 ) Cedarhurst, NY 11210 ) ) | |
| and ) ) | **JURY TRIAL DEMANDED** |
| ROCHELLE JONES ) **Serve at:** ) 29 Nannette Drive ) Florissant, MO 63033 ) ) | |
| and ) ) | |
| TANDC OP LLC ) **Serve at:** ) Missouri Secretary of State ) 600 West Main ) Jefferson City, MO 65101 ) ) | |
| and ) ) | |
| SAMUEL GOLDNER ) **Serve at:** ) 1180 E. 24th Street ) Brooklyn, NY 11210 ) ) | |
| and ) ) | |

1

| | |
|---|---|
| CHAIM HERTZEL | ) |
| **Serve at:** | ) |
| 1267 Waterview Street, | ) |
| Far Rockaway, NY 11691 | ) |
| | ) |
| and | ) |
| | ) |
| DONNA ALVAREZ | ) |
| **Serve at:** | ) |
| 8 Lindenwood Lane | ) |
| St. Joseph, MO 64505 | ) |
| | ) |
| and | ) |
| | ) |
| KALLISTI SIMONS-WYLIE | ) |
| **Serve at:** | ) |
| 11350 Four Points Dr. Apt. 1023 | ) |
| Austin, TX 78726 | ) |
| | ) |
| and | ) |
| | ) |
| ABBEY WOODS OPERATIONS LLC | ) |
| **Serve at:** | ) |
| CT Corporation System | ) |
| 120 South Central Avenue | ) |
| Clayton, MO 63105 | ) |
| | ) |
| and | ) |
| | ) |
| AW OPERATION LLC | ) |
| **Serve at:** | ) |
| Missouri Secretary of State | ) |
| 600 West Main | ) |
| Jefferson City, MO 65101 | ) |
| | ) |
| and | ) |
| | ) |
| ABBEY WOODS REALTY | ) |
| HOLDINGS LLC | ) |
| **Serve at:** | ) |
| The Corporation Trust Company | ) |

2

| | |
|---|---|
| Corporation Trust Center | ) |
| 1209 Orange Street | ) |
| Wilmington, DE 19801 | ) |
| | ) |
| and | ) |
| | ) |
| ABBEY WOODS REALTY LLC | ) |
| **Serve at:** | ) |
| CT Corporation System | ) |
| 120 S. Central Avenue | ) |
| Clayton, MO 63105 | ) |
| | ) |
| and | ) |
| | ) |
| AW REHAB HOLDING LLC | ) |
| **Serve at:** | ) |
| Missouri Secretary of State | ) |
| 600 West Main | ) |
| Jefferson City, MO 65101 | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff National Fire and Marine Insurance Company ("National Fire"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, states as follows:

1. National Fire brings this action seeking the interpretation of a Senior Care Liability Policy including professional liability coverage, and a declaration of its rights and obligations thereunder with respect to the three below-listed lawsuits filed against its insureds (collectively, the "Underlying Cases"):

    a. *Jones v. TANDC OP LLC*, which is pending in the Circuit Court of St. Louis County, MO as Case No. 21SL-CC03230;

    b. *Sanders v. Nursing & Rehab at Raymore, LLC et al.*, which was pending in the Circuit Court of Cass County, MO as Case No. 22CA-CC00097 but has settled and been dismissed with prejudice; and

    c. *Alvarez et al. v. Abbey Woods Operations, LLC et al.*, which is pending in the Circuit Court of Buchanan County, MO as Case No. 22BU-CC00335.

## PARTIES, JURISDICTION, AND VENUE

2. National Fire is and was at all times mentioned herein a corporation incorporated under the laws of the State of Nebraska with its principal place of business in the State of Nebraska, and therefore is a citizen of the State of Nebraska, engaged in the business of insurance, and licensed to transact that business in the State of Missouri.

3. Upon reasonable information and belief, Goldner Capital Management LLC, which is believed to do business as Goldner Capital Management, is and was at all times mentioned herein a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York, such that it is a citizen of the states of Delaware and New York.

4. Upon reasonable information and belief, Rochelle Jones is and was at all times mentioned herein a residence of St. Louis County, Missouri. Jones is the Plaintiff in the *Jones* matter identified in paragraph 1.

5. Upon reasonable information and belief, TANDC OP LLC is and was at all times mentioned herein a corporation organized and existing under the laws of the State of Delaware with its principal office address in the State of New York and its principal place of business in the State of Missouri, such that it is a citizen of the states of Delaware, New York, and/or Missouri.

4

6. Upon reasonable information and belief, Samuel Goldner is and was at all times mentioned herein a natural person who resides in and is a citizen of the State of New York.

7. Upon reasonable information and belief, Chaim Hertzel is and was at all times mentioned herein a natural person who resides in and is a citizen of the State of New York.

8. Upon reasonable information and belief, Donna Alvarez is and was at all times mentioned herein a resident of Buchanan County, Missouri. Alvarez is a plaintiff in the *Alvarez* matter referenced in paragraph 1.

9. Upon reasonable information and belief, Plaintiff Kallisti Simons-Wylie is and was at all times mentioned herein a resident of Travis County, Texas. Simons-Wylie is a plaintiff in the *Alvarez* matter referenced in paragraph 1.

10. Upon reasonable information and belief, Abbey Woods Operations LLC is and was at all times mentioned herein a corporation organized and existing under the laws of the State of Delaware with its principal office address in the State of New York and its principal place of business in the State of Missouri, such that it is a citizen of the states of Delaware, New York, and/or Missouri.

11. Upon reasonable information and belief, AW Operation LLC is and was at all times mentioned herein a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the State of Missouri, such that it is a citizen of the state of Missouri.

12. Upon reasonable information and belief, Abbey Woods Realty Holdings LLC is and was at all times mentioned herein a corporation organized and existing under the laws of the State of Delaware with its principal office address in the State of New York and its principal place

5

of business in the State of Missouri, such that it is a citizen of the states of Delaware, New York, and/or Missouri.

13. Upon reasonable information and belief, Abbey Woods Realty LLC is and was at all times mentioned herein a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware, such that it is a citizen of the state of Delaware.

14. Upon reasonable information and belief, AW Rehab Holding LLC is and was at all times mentioned herein a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the State of Missouri, such that it is a citizen of the state of Missouri.

15. This case involves citizens of different states and Plaintiff is not a citizen of any of the states in which any Defendant is a citizen.

16. Each of the Underlying Cases requests judgment in excess of $25,000, thereby making the total amount at issue in the Underlying Cases in excess of $75,000, collectively.

17. The insurance policy coverage at issue in this action has a per event limit of $1,000,000 and an aggregate limit of $3,000,000, which are subject to a $500,000 per event Self-Insured Retention.

18. Based on allegations in the Underlying Cases, the amount in controversy exceeds $75,000 exclusive of interest and costs.

19. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

20. Venue is proper in the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1391(a) because a substantial amount of the events and occurrences giving rise to this action occurred in this District in that the *Jones* case is pending in St. Louis

6

County, the Policy insures several properties located in this District and Missouri, several Defendants are citizens of Missouri, and Missouri law applies to the interpretation of the Policy and the parties' rights and duties thereunder.

21. This Court "may declare the rights and other legal relations of any interested parties seeking such declaration" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) with respect to the policy of insurance issued by National Fire and all above referenced parties are interested parties with respect to the determinations of rights pursuant to the insurance policy issued by National Fire.

## GENERAL ALLEGATIONS

22. National Fire brings this action seeking the interpretation of the insurance policy described below and a declaration of its rights and obligations thereunder.

23. An actual justiciable controversy exists between National Fire and Defendants, and litigation as to this controversy is imminent and inevitable. The resolution of the matters raised in this declaratory judgment action will dispose of the issues and disputes between the parties.

24. All necessary and proper parties are before the Court for the matters in controversy.

25. National Fire has no other adequate remedy at law.

## THE INSURANCE POLICY

26. National Fire issued a Senior Care Liability Policy to Goldner Capital Management ("Goldner") as the "first named insured", which was issued as Policy Number NSC100506, with effective dates of July 8, 2021 to October 8, 2021 (the "Policy"). A copy of the Policy is attached hereto and incorporated by reference as **Exhibit A**.

27. The other Defendants to this action are either named as insureds under the Policy or qualify as an insured due to their status as an employee and/or executive of Goldner.

28. The Policy includes Professional Liability coverage. This coverage is subject to a per event limit of $1,000,000 and an aggregate limit of $3,000,000, which are in excess of and subject to a $500,000 per event/$Nil aggregate Self-Insured Retention ("SIR" or "SIRs") for "loss" and "claims expense".

29. The Policy contains the following relevant provisions:

*SENIOR CARE LIABILITY POLICY*
*COMMON POLICY PROVISIONS AND CONDITIONS*
\*\*\*

**I. DEFINITIONS**

These definitions apply to all Coverage Parts:
\*\*\*

**H. Claim** means an express, written demand upon an **insured** for money or services as compensation for damages, including a suit. As used in this definition, "suit" means a civil proceeding in which damages to which this insurance applies are alleged. Suit also includes an arbitration or other alternative dispute resolution in which such damages are claimed and to which an **insured** must submit or does submit with the **company's** consent.

**I. Claims expense** means all costs and expenses incurred in connection with the investigation, adjustment, and defense of any **claim** or **potential claim**. Such costs and expenses:

1. shall only include:
   a. attorneys' fees paid to the law firm selected to defend an **insured**;
   b. court costs;
   c. expert fees;
   d. reporter fees;
   e. the cost of any alternative dispute resolution ordered by a court, otherwise required law, or pre-approved by the **company**;
   f. post-judgment interest on that portion of the judgment that does not exceed the Limit of Liability available under the particular coverage provided; and
   g. such other costs and expenses that the **company** determines to be reasonably related to the defense of a **claim** or **potential claim**.
2. shall not include:
   a. **loss**;
   b. attorneys' fees awarded to a claimant;
   c. the salary of any **employee** of an **insured**; or
   d. the forgiveness of any amounts owed for the cost of care or services rendered by an **insured**.

**J. Company** means the Issuing Company shown on the Declarations.

**K. Employee** means any person who is under the supervision and control of any **named insured** and who was acting within the scope of their duties on behalf of that **named**

8

**insured** at the time of the **event**, offense, **health care event** or any other act or omission that results in a **claim** ….

\*\*\*

N. **First named insured** means the person or organization shown as the First Named Insured on the Declarations.

\*\*\*

Q. **Insured** means:
   1. the **first named insured**;
   2. any **named insured**;
   3. any **employee;**

\*\*\*

W. **Loss**
   1. Means civil damages, including prejudgment interest, which an **insured** becomes legally obligated to pay through adjudication or settlement.
   2. Does not include:
      a. any damages that are greater than any applicable Limit of Liability;
      b. any injunctive or other equitable relief;
      c. **claims expense**;
      d. attorneys' fees awarded to a claimant as a fine, penalty, or sanction based upon any **insured's** misconduct; however, attorneys' fees awarded as a part of the claimant's damages in a covered **claim** for any other purpose will included as **loss**;
      e. the salary of any **employee**; or
      f. the forgiveness of any amounts owed for the cost of care or services rendered by an **insured**.

\*\*\*

AA. **Named insured** means any of the following, but only if listed by name on a Schedule of Named Insureds:
   1. any organization, including any corporations, partnerships or joint ventures; or
   2. any individual person, but only to the extent that such person was acting in the course and scope of their duties of employment with the **first named insured** or another **named insured**.

\*\*\*

II. **DEFENSE AND SUPPLEMENTAL PAYMENTS**

These provisions apply to all Coverage Parts:

A. DEFENSE

The **company** will have the exclusive right and duty to defend any **claim**, and the exclusive right to defend a **potential claim**, against an **insured** to which this policy applies, strictly conditioned upon an **authorized insured's** compliance with the Reporting Requirements condition. However, the **company** has no duty to:

1. defend a **potential claim;**
2. defend an **insured** until any applicable Self-Insured Retention has been exhausted by the payment of **loss** or **claims expense**;
3. defend an **insured** after the applicable Limits of Liability have been exhausted by the payment of **loss** or **claims expense**;

9

***

**IV.   DEDUCTIBLES AND RETENTIONS**

These provisions apply to all Coverage Parts:

   A.  LOSS AND CLAIMS EXPENSE

***

2. If a Self-Insured Retention is shown on the Declarations, and is designated as "Loss and Claims Expense," it is agreed and understood that the **company's** duty to pay **loss** and **claims expense** for any **claim** or **potential claim** thereunder will be limited in the following manner:
   a. the **company** shall pay **loss** and **claims expense** only in excess of the Self-Insured Retention;
   b. the Self-Insured Retention shall be applied to **claims expense** first, then to **loss**;
   c. the **first named insured** shall have a duty to pay all **loss** and **claims expense** up to the amount of the Self-Insured Retention, subject to any applicable Self-Insured Retention Aggregate, payment of which shall not be unreasonably withheld;
   d. the applicable Limits of Liability shall not be reduced by the amount of the Self-Insured Retention; and
   e. the Self-Insured Retention shall apply to all **loss** and **claims expense** arising from an **event, health care event**, offense or other covered incident, regardless of the number of **insureds** found liable for the **loss** and/or **claims expense**.

***

**V.   CONDITIONS**

These conditions apply to all Coverage Parts:

***

   C.  ASSISTANCE AND COOPERATION

2. The **company's** duty to defend and pay **loss** for any **claim** or **potential claim** is strictly conditioned upon all **insureds'** cooperation with the **company** in the investigation, defense, and/or settlement of any matter to which this policy applies. Such cooperation shall include, but is not limited to:
   a. attendance at any deposition, hearing, or trial, as requested by the **company**;
   b. assistance in securing and giving evidence;
   c. obtaining the attendance of witnesses;
   d. doing nothing to prejudice the **company's** ability to investigate, defend, and/or manage any matter to which this policy applies;

   D.  BANKRUPTCY OR INSOLVENCY

The bankruptcy of an **insured** or an **insured's** estate, or the non-payment by an **insured** or by any other organization responsible for a Deductible or Self-Insured Retention, shall not act to modify any duty owed by an **insured** or the **company** under the policy.

10

> Under no circumstances will such bankruptcy, insolvency or non-payment require the **company** to assume or in any way be responsible for any Deductible or Self-Insured Retention, or otherwise assume any obligation owed by any **insured** under this policy. The **company** will have no duty to pay **loss** or **claims expense** for any **claim** or **potential claim** unless the **insured** or any other organization responsible for the Self-Insured Retention timely pays the Self-Insured Retention in full.
>
> ***
>
> S.  SETTLEMENT
>
> The **company** may only settle a **claim, potential claim** or other matter brought against an **insured** with the consent of the **first named insured.**
>
> ***
>
> **PUNITIVE DAMAGES EXCLUSION ENDORSEMENT**
>
> ***
>
> The following exclusion is added to the policy with respect to all Coverage Parts:
>
> PUNITIVE DAMAGES
>
> Any damages over and above actual compensatory damages. This includes punitive, exemplary and multiple damages.

## FACTUAL ALLEGATIONS

30. At all times relevant, The Medical Protective Company ("TMPC") (also referred to as "MedPro" in the CSA), functioned as the third party administrator for the Policy.

31. TMPC entered into a Claim Services Agreement ("CSA") with Goldner on July 8, 2021. Under the CSA, Goldner engaged TMPC to handle the adjustment, investigation, and handling of claims and matters relating to claims under the Policy for which Goldner was responsible for payment of "loss" and "claims expenses" within the SIR. A copy of the CSA is attached hereto and incorporated by reference as **Exhibit B**

32. The CSA contains the following relevant provisions:

> **CLAIM SERVICES AGREEMENT**
>
> ***

2. <u>Consideration.</u> Client accepts the liabilities, duties and responsibilities as are described in this Agreement concurrently with MedPro's issuance of the Policy with an SIR, and as consideration for the agreement of the Parties with respect to handling claim within the SIR…. Client agrees to assume and pay for all liabilities, costs and expenses within the SIR, and to indemnify and hold MedPro harmless as provided in this Agreement.
3. <u>Payment of Expenses and Claims.</u> The Client agrees to pay directly all claims expenses and loss up to the limit(s) of the applicable SIR(s). Such loss and claims expenses shall not be the responsibility of MedPro. In the event of a loss payment, Client agrees to provide MedPro with immediate proof of issuance of the loss payment as soon as payment is issued. All other payments made by the Client shall be captured on the Payment Sheet and submitted to MedPro on a quarterly calendar basis.
4. <u>Claim Expenses.</u> Claim expenses shall include, but are not limited to, all independent adjuster fees and charges, investigator fees and charges, administrative agency and court costs, fees and expenses; appeal bonds, printing costs related to trials and appeals, fees of witnesses and experts, medical examination and review, laboratory costs, fees for service of process; fees and disbursements to attorneys; pre and post judgment interest, the cost, material and labor for photography, fees or costs for experts, costs of copies of public records, court reporter services and transcripts, and any similar fees, costs or expenses whatsoever properly chargeable to the investigation or defense of a particular claim or to protect the right of subrogation of the Client. All compensation for salaried employees of MedPro, or independent adjusters substituted therefore, shall be excluded from claim expenses.
5. <u>Authority to Settle Claims.</u> Client shall retain authority regarding any settlement involving payment of loss within the SIR. However, MedPro expressly reserves the authority to incur all reasonable claim expenses with respect to its servicing of claims under this Agreement.

***

10. <u>Termination for Cause.</u>
    A. at the election of MedPro, upon written notice to Client, if Client becomes insolvent, if it makes an assignment for the benefit of its creditors, if a petition for relief under the Bankruptcy Code is filed by or against it, or if a trustee, receiver or other custodian of its assets is appointed;

**\*\*\***

    E. at the election of either party, if the other party breaches any provision of this Agreement and fails to cure such breach within thirty (30) days after written notice of the breach is given.

**\*\*\***

14. <u>Delegation of Duties and Selection of Counsel.</u> The parties acknowledge and agree that MedPro is authorized to delegate any of its duties to, and to engage and use as needed, independent third party administrators and/or investigators acceptable to MedPro to perform or assist in performing the services described in this Agreement. MedPro is authorized to appoint and use as needed defense counsel in the defense, investigation or handling of any claim.

**\*\*\***

20. <u>No Insurance Risk-Independent Contractor.</u> MedPro and the Client understand and agree that this is a claim service agreement only and MedPro bears no insurance risk for claims seeking damages in amounts within the SIR. The relationship of MedPro to the Client is that of an independent contractor engaged by the Client to assist in service of claims subject to this Agreement. MedPro has no obligation under this Agreement to advance funds for damages, claim expenses, for settlements or to satisfy judgments. Failure of the Client to advance such funds gives MedPro the sole option to suspend further performance of its obligations under this Agreement until Client remits such funds to MedPro.

***

33. Goldner did not obtain insurance to cover the SIR elsewhere, so the SIR was uninsured.

34. Each of the Underlying Cases alleges claims of professional liability against Defendants. Specifically, each case alleges wrongful death resulting from the care and treatment, or lack thereof, provided to the underlying decedents at nursing/long term care facilities owned, operated, and/or managed by Defendants.

35. Upon receipt of the Underlying Cases, TMPC engaged counsel to defend the insureds named as defendants in the Underlying Cases ("Defense Counsel").

36. Goldner repeatedly failed to pay the Defense Counsel retained by TMPC for their work on the Underlying Cases and pay for other "claims expenses" associated with the Underlying Cases, as required by the SIR.

37. TMPC made multiple attempts to secure compliance with terms of the Policy, including the SIR, beginning as early as October 14, 2022—however, Goldner repeatedly and consistently failed to comply.

38. For example, in March 2023, Goldner agreed to a payment plan with defense counsel in the *Alvarez* case, beginning with an initial payment of $5,000 for past fees to be made immediately. However, due to Goldner's inability or refusal to promptly assemble these funds and due to time-sensitive matters in the *Alvarez* case, TMPC proposed to make this initial payment of $5,000 on Goldner's behalf subject to reimbursement by Goldner before the end of March 2023.

13

Goldner agreed to TMPC's proposal regarding reimbursement and memorialized the same in writing on March 21, 2023. To date, Goldner has not reimbursed TMPC, despite receiving written reminders of its obligation to do so.

39. Due to Goldner's continued inability or refusal to pay "claims expenses" under the SIR, Defense Counsel was forced to delay performance of work and sought to withdraw from the Underlying Cases, potentially exposing Goldner and the other parties to this action to numerous risks.

40. Despite not having a duty to do so, but in order to avoid said withdrawals and risks, MedPro Group, on behalf of National Fire, exercised its exclusive right under the Policy to assume the duty to pay "claims expenses" (not "loss") for the Underlying Cases, subject to a right of reimbursement of all such "claims expenses" within the SIR amount.

41. Upon information and belief, the parties in the *Sanders* case have agreed to a settlement within the Policy's SIR, and the court in that case has entered an order approving the settlement. National Fire has not paid any such settlement funds and, as set forth above, has no obligation to do so.

**GROUNDS FOR DECLARATORY JUDGMENT**

42. As the "first named insured", as that term is defined by the Policy, Goldner was and is obligated to pay "claims expenses" and "loss" for the Underlying Cases until the applicable SIR(s) were exhausted but has continuously failed to do so.

43. Under Section II.A.2 of the Policy, National Fire has no duty to defend the Underlying Cases until Goldner satisfies any applicable SIR(s) (though National Fire does retain the exclusive right to defend the Underlying Cases, should it choose to do).

44. Similarly, under Section IV.A.2, National Fire has no duty to pay any "claims expense" or "loss" related to the Underlying Cases until Goldner pays all "claims expense" and "loss" up to the amount of the applicable SIR(s), with said SIR(s) applying first to "claims expense" and then to "loss".

45. Because National Fire has paid "claims expenses" in the Underlying Cases, despite Goldner's failure to satisfy the SIR, National Fire has a right of reimbursement for the defense costs spent to-date on the Underlying Cases.

46. Further, National Fire should owe no duty to indemnify or defend with respect to the Underlying Cases because Goldners' actions and omissions constitute violations and noncompliance of the terms and conditions of the Policy, thereby voiding coverage.

47. Namely, Goldner has "unreasonably withheld" payment of "claims expense" for the Underlying Cases within the SIR, which is expressly prohibited by Section IV.A.2.c of the Policy.

48. Goldner has also "prejudice[d]" National Fire's "ability to investigate, defend, and/or manage" the Underlying Cases, as prohibited by Section V.C.2.d of the Policy, therefore barring National Fire's duty to defend and pay "loss" for the Underlying Cases. Specifically, Goldner's refusal or inability to pay Defense Counsel caused Defense Counsel to stall their work in the Underlying Case and seek withdrawal.

49. Lastly, National Fire has no duty to indemnify any damages over and above actual compensatory damages, pursuant to the Punitive Damages Exclusion Endorsement.

WHEREFORE, Plaintiff National Fire and Marine Insurance Company prays that this Court declare the rights of the parties under the Policy and enter judgment finding and declaring:

    a.    That Goldner violated and failed to comply with the Policy's terms and conditions, thereby voiding coverage for the Underlying Cases under the Policy and relieving National Fire from any duty to defend or indemnify.

    b.    That National Fire has no duty to indemnify with respect to the Underlying Cases until the applicable SIR(s) are exhausted.

    c.    That National Fire has no duty to defend the Underlying Cases until the applicable SIR(s) are exhausted.

    d.    That National Fire shall be reimbursed by Goldner for the defense costs and other "claims expense" paid by National Fire with respect to the Underlying Cases.

    e.    That National Fire has no duty to indemnify any damages over and above actual compensatory damages, including punitive, exemplary, and multiple damages.

    f.    That National Fire is entitled to its costs, including attorneys' fees; and

    g.    That National Fire is entitled to any such further relief this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

HEPLERBROOM LLC

By: */s/ Patrick A. Bousquet*
    Patrick A. Bousquet    #57729MO
       email:  pb2@heplerbroom.com
    Matthew T. Suddarth    #74857MO
       email:  ms5@heplerbroom.com
    701 Market Street, Suite 1400
    St. Louis, Missouri 63101
    314-241-6160 phone
    314-241-6116 fax
    ATTORNEYS FOR **PLAINTIFF**

## **PROOF OF SERVICE**

      I hereby certify that on January 8, 2024 this document was electronically filed with the Clerk of the Court using the CM/ECF system.

*/s/  Patrick A. Bousquet*
